Hemsley v. Marlborough Hotel Co.

FREDERICK HEMSLEY

v.

THE MARLBOROUGH HOTEL COMPANY.

[Filed September 29th, 1903.]

1. On bill filed to restrain the violation of two restrictive covenants respecting the land in question—*Held*, that, as to one covenant, complainant had no right to enforce the covenant, as assignee of Mary Disston, by virtue of the existence of any plan. *Held, also*, that, as a subsequent

grantee of Mary Disston, the complainant cannot successfully assert a right to enforce the covenant, as there was no evidence of an intention that such a covenant was inserted for the benefit of complainant's property.

2. In respect to the other covenant referred to—*Held*, that the benefit of the stipulation contained in the deed of Mary Disston to a predecessor in the title of the defendant did not become attached to the Disston cottage, and did not pass to the purchaser of that land.

*Mr. Joseph H. Gaskill,* for the complainant.

*Mr. Clarence L. Cole,* for the defendant.

REED, V. C.

The parties to this suit are the same as those in the case reported in *17 Dick. Ch. Rep. 164*. The former suit was brought to enforce, by injunction, a restrictive covenant, and the purpose of this suit is to restrain the violation of two other restrictive covenants respecting the same property.

The facts upon which the relief is asked can be more quickly apprehended by the use of the diagram in the report of the preceding case.

The complainant is the owner of lot number one (1), the Disston cottage lot, and lots numbers two (2) and three (3), shown upon the diagram.

The defendant is the owner of lots fourteen to twenty-five, inclusive. Upon a part of this property the defendant has erected a hotel known as the "Marlborough."

It is insisted that this hotel is so constructed as to infringe two covenants binding upon the owners of the land upon which it is erected. The first asserted violation is that the hotel has been built within fifteen feet of Park Place, and the second that the building has been extended more than two hundred feet beyond the southerly boundary line of a lot known as Amelia R. Sparks' lot, looking towards the ocean.

There is no doubt that the defendant was bound by restrictions of the kind mentioned.

It seems, also, that, in erecting the building, the bay windows in the upper stories encroached upon the fifteen-foot strip of land; that a pillar slightly extended beyond the two-hundred-

foot limit, and that a walk, elevated from eleven to fourteen feet, has been built from the piazza of the hotel to the municipal boardwalk, entirely beyond the limit mentioned in the covenant.

The primary question (assuming that the covenant is enforceable by someone) is whether Mr. Hemsley has the right to compel its observance.

I will first speak of the fifteen-foot covenant, which appears in the deeds for the defendant's property in these words: "No building whatever shall ever be erected on said lot of ground within the space of fifteen feet from Park Place."

This covenant was never entered into with Mr. Hemsley, but was contained in deeds from the predecessors in the title which Mr. Hemsley holds, who made conveyances of portions of the land now owned by the defendant.

The complainant rests his right to enforce this covenant upon two grounds—*first,* upon the existence of a general plan that a fifteen-foot space upon Park Place should be kept clear of buildings; *second,* that he bought his property from Mary Disston, after she had sold property to the defendant, by a deed in which the restriction was put for the benefit of her remaining property, now owned by the complainant.

To determine the question thus raised it is essential to trace the devolutions of the titles of the properties involved.

The original tract of land, plotted upon the diagram, was owned by Hamilton Disston and George F. Lee. On May 28th, 1879, they made a deed of dedication of a street, sixty feet in width, labeled "Park Place," and of a park labeled "Brighton Park." Nothing was said in the deed respecting the present restriction.

Also, on May 28th, 1879, Disston and Lee sold lot one (1), the Disston cottage lot, to Mary Disston. This deed did not contain the fifteen-foot restriction. On the same day Hamilton Disston sold to Lee his undivided interest in lots two, three, four, five and six, north of the Disston cottage lot. In this deed there was no mention of the restriction. On September 11th, 1879, Lee conveyed these lots to Mary Disston, by a deed containing this covenant. By deed of September 10th, 1879, but acknowledged by one of the grantors on September 11th, 1879, Disston

and Lee sold lots fifteen and sixteen to Amelia R. Sparks, and the deed contained the covenant.

Mary Disston, it is perceived, then owned all the property on the east side of Park Place, consisting of the Disston cottage, without restriction, and of lots two, three, four, five and six impressed with the restriction. Disston and Lee owned all the lots on the westerly side of Park Place, except lots fifteen and sixteen, which two lots had been sold to Amelia R. Sparks, impressed with the restriction.

Thereafter all the deeds from Mary Disston, or her representative, and all the deeds from Lee and Disston for property bounding upon Park Place, contained the fifteen-foot restrictive covenant.

Mary Disston sold the westerly half of lots four, five and six, bounding on Park Place, to F. A. Park, on February 10th, 1881, by deed containing the covenant. Her interest in lots one, two and three passed to the complainant by a deed dated October 1st, 1893, made by the executors of Mary Disston, which deed contained the covenant.

. It is perceived that there is no evidence of a plan respecting the fifteen-foot retrocession from Park Place, except such as can be discovered in the deeds actually executed. Nothing of it appears in the dedication deed or upon the map filed with it. Now, it is to be observed that if the plan can be evolved from the deeds themselves, it must be confined to the westerly side of Park Place. The first deed, putting the title of lots two, three, four, five and six, which had been held in common by Disston and Lee, passing the title to Lee in severalty, contained no restriction. Nor was the restriction contained in the deed from Disston and Lee to Mary Disston for the Disston cottage lots. The absence of the restriction from these deeds is fatal to the theory of the existence of a general plan covering the grounds including these lots.

Respecting the lots on the westerly side of Park Place, as already observed, all the deeds from Disston and Lee contained the covenant. But, if it be conceded that this fact alone is sufficient to establish the existence of a plan, the scope of which is evidenced by what was actually contained in the deeds (upon

Hemsley *v.* Marlborough Hotel Co.

which question no opinion is expressed), it is apparent that, inasmuch as the scheme includes the lots on that side of Park Place .only, the right to enforce the covenant, by virtue of such a plan, resides only in a grantee of one of those lots. It follows, therefore, that the complainant obtained no right to enforce the covenant as the assignee of Mary Disston, by virtue of the existence of any plan.

The remaining question is whether, as a subsequent grantee of Mary Disston, the complainant can successfully assert a right to enforce the covenant.

The answer to this question depends upon the solution of another query, namely, whether the covenant contained in the deed of Mary Disston to the Female Academy was inserted for the benefit of the property now owned by the complainant. This query arose in the preceding case, already mentioned, in respect to the dwelling-house covenant, which, in respect to the present question, seems to stand upon the same footing as the present covenant. In that case the conclusion was reached that there was no evidence of an intention that the covenant was made for the benefit of lots one, two and three. The same consideration leads to a similar conclusion in this case.

If, however, Mrs. Disston or the complainant had ever been equipped with the right to enforce this covenant, it would hardly seem equitable to do so now by means of a mandatory injunction. The encroachments of the main building are trivial and unintentional. The encroachments of the bay windows are substantial. But, in view of the encroachments of the porches of the other buildings upon the fifteen-foot strip, on the same side of Park Place, which have remained unmolested, I think that an injunction commanding the removal of the projections complained of should be refused.

The remaining question involves the other covenant. This covenant was contained in one deed only, that of Mary Disston to the Female Academy, a predecessor in the title of the defendant. The words of this covenant are:

"No building or improvement of any kind shall be erected on said lot of ground, more than two hundred feet, without the consent of Mary Disston or her heirs, beyond the southernmost boundary line of the lot of Amelia R. Sparks looking towards the ocean."

This stipulation seems to differ from the preceding, in the particular that the erection upon the two hundred feet was forbidden without the consent of Mary Disston or her heirs. The last words, however, instead of exhibiting an understanding between the parties that the stipulation was for the benefit of the Disston cottage lot, in my judgment, indicates the direct opposite. It seems to me to exhibit an intention that Mary Disston should retain a limited control over the use of the two hundred feet for the benefit of herself and her heirs. It may be that the clause was inserted because Mary Disston expected to live in the Disston cottage, and that, while living there, she desired to be protected against any interception of view or air over the two hundred feet. But she retained in herself and her heirs the right to release the covenantors or its assigns from the burden of the covenant, whether she should or should not remain the owner of the Disston cottage. The permanence of the stipulation depended upon a subsequent agreement between Mary Disston or her heirs, and not upon the ownership of the two-hundred-foot strip. The benefit of the stipulation did not become attached to the Disston cottage, and did not pass to the purchaser of that land.

The bill should be dismissed.